[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Both parties appeared with their counsel. All statutory stays having expired, the court has jurisdiction.
Having heard the evidence, the court finds as follows:
The plaintiff and the defendant, whose maiden name was Creamer, intermarried at New York, New York on December 29, 1979; that the plaintiff has resided continuously in Connecticut for a period of one year next preceding the date of the filing of this complaint; that there is one minor child issue of the marriage, William Westfield Martin Fewtrell, born May 19, 1986; that there were no other minor children born to the defendant since the date of the marriage of the parties; that the marriage has broken down irretrievably; that there is no hope of reconciliation and that no state agency contributed to the maintenance of either party or the child. The parties have another son, Ganwise Fewtrell, aka Wiz, who is an adult.
The plaintiff testified that the parties lived together for four years prior to their marriage; that immediately after they married, difficulties in the marriage occurred; that the defendant became more and more depressed; that she acted irrationally; that she would not let him take their first child, Ganwise, who was born in 1976, outside; that he had the defendant admitted to the psychiatric ward at St. Vincent's Hospital for one week; that she was fine for six months then abruptly left the home with their child Ganwise; that after six months the parties reconciled and they moved to Old Saybrook, Connecticut; that in 1990 her depression and irrational behavior reoccurred; that she became dominating; that she interfered with his relationship with their son William, who was born in 1986, and his attempts to discipline William; that she instructed William how to call 911 when he became upset with the plaintiff; that William would threaten to call 911 whenever he did not like what the plaintiff was doing; that when plaintiff tried to help William with his school problems, she interfered; that she and William CT Page 14273 would go to the movies without him and that in December 1999 she and William vacated the marital home until April 2001.
The defendant testified that the plaintiff became physically abusive during 1979 or 1980 after he lost his employment; that he hit her in the head, and that he would hit their son Ganwise or shake him; that she left the plaintiff in 1983 for six months because of his abuse to their son Ganwise; that the plaintiff does not understand family, which included his attitude toward their children; that in 1999 she left the marital home to protect their son William from the plaintiff.
The plaintiff denies any physical abuse to the defendant except for slapping her once before they got married when she froze on a sidewalk in Port Jefferson.
The plaintiff, who was born in Great Britain on August 14, 1943, is a self-employed shipwright. He repairs and builds boats. He has been engaged in said occupation in the United States and the United Kingdom since 1979. He had been a concert violinist but has not engaged in said vocation since 1960.
He operates his employment at the marital home located at 12 Honey Hill Road, Lyme, Connecticut. He claims that he has about 15 hours per week of productive income at $30.00 to $35.00 per hour and that some weeks it takes him 40 hours to produce said 15 hours of income.
Plaintiff has a bad back. All his spinal vertebrae are fused which limits his movements and affects his ability to work. He believes that he is not employable because of his back condition.
The defendant, who was born December 4, 1946, is presently employed as a registered nurse at Yale New Haven Hospital. She has a net weekly income of around $800.00. Presently, she attends classes at Trinity College to increase her employment opportunities. During the marriage and before her present employment, the defendant had various types of employment.
The parties have agreed that no alimony is to be awarded to either party and have agreed on custody and support for their minor son, William.
The issues of disagreement concern the responsibility for the debt of $15,000.00, which defendant claims she incurred between December 1999 and April 2001 when she and their son William did not voluntarily live in the marital home, the plaintiffs right to visitation with his minor son, CT Page 14274 William, and the fair market value of the marital home at 12 Honey Hill Road, Lyme, Connecticut.
The $15,000.00 Debt
The plaintiff and defendant had a joint account in the Essex Savings Bank which was used for the family expenses. The defendant would deposit her net weekly income of about $800.00 into said account. The plaintiff would deposit his net weekly income of about $578.00 into said account.
Between December 1999 and April 2001, while the defendant and their son, William, were out of the marital home, the defendant rented premises at $1,000.00 per month. She testified that she used the joint account the parties had in the Essex Savings Bank and created credit card debts with a present balance of $15,000.00 to pay for rent and other living expenses for herself and their son, William. Further, she testified that the plaintiff did not pay any support to the defendant other than his deposits in said account.
The defendant testified that she is attending Trinity; that in 1998 when she started, the tuition was $998.00 and the school expenses were $100.00 per month and that her tuition and college expenses were part of the said credit card debt.
The defendant also testified that during the period December 1999 to April 2001, she required medical treatment three times; that the medical expenses were all paid except for $7,000.00 which she paid from funds in the joint bank account of the parties.
Reasonable Rights of Visitation
The parties have agreed that the defendant have sole custody of their son William. She has no objection to the plaintiff having reasonable rights of visitation but wants said visitation qualified because of the plaintiffs alleged behavior toward their son.
The Marital Home — 12 Honey Hill Road, Lyme, Connecticut
The parties purchased the marital home in 1987 for $110,000.00. The property was improved to the extent that the upper floor was converted into a separate apartment where the defendant lived for a while with their son William. The plaintiff operates his boat repair shop on the first floor of said home.
The parties agreed that the defendant would receive $20,000.00 or CT Page 14275 one-half of the equity, whichever is the greater for her interest in the marital home.
James Blair, a real estate appraiser hired by the plaintiff, valued the fair market value of the property at $140,000.00 (see Plaintiffs Exhibit B) noting that because of the type of home and its unusual characteristics, it was difficult to evaluate and find comparable sales.
The defendant's appraiser, Francis J. Buckley, III, valued the fair market value of the subject property at $153,000.00 (see Defendant's Exhibit 2).
Both appraisers used the comparable sales approach in determining the fair market value of the property although admitting that because of the unique character of the property comparable sales were hard to find.
Based on the testimony of the appraisers and their appraisals, the court finds, for purposes of this case, that the fair market value of the marital home is $146,500.00. It is subject to a mortgage with a balance of $102,000.00 more or less.
Based on the evidence, the court finds that the marriage of the parties has broken down irretrievably. I find the parties equally at fault for the breakdown. After considering the provisions of Connecticut General Statutes §§ 46b-62, 46b-81, 46b-82 and 46b-84, and my findings, judgment is entered dissolving the marriage of the parties on the grounds of irretrievable breakdown with no hope for reconciliation. It is ordered that:
1. No alimony is awarded to either party.
2. Sole custody of the minor child William is awarded to the defendant subject to the following:
a. The defendant shall keep the plaintiff informed at all times about the status of the health and welfare of the child. Plaintiff shall be entitled to conferences with the school personnel and medical providers as well as being entitled to access copies of all records from those providers.
b. Plaintiff shall have reasonable rights of visitation with the minor child upon a schedule of access worked out directly between William, the minor child, and the plaintiff.
c. The minor child shall continue in his course of counseling with Dr. CT Page 14276 Chuck Doyle. The plaintiff shall be integrated into that counseling in accordance with the recommendations of the therapist.
d. The plaintiff shall pay child support of $90.00 per week in accordance with the guidelines for the state of Connecticut.
e. Defendant shall maintain medical insurance for the benefit of the minor child as the same is available as an incident of her employment. The parties shall pay the unreimbursed medical expenses for the minor child in accordance with the State of Connecticut Guidelines. A 46b-84
(e) order shall enter.
3. The plaintiff shall pay to the defendant $20,000.00 or one half of the net equity in said property, whichever is the larger, within 90 days. The equity shall be determined by deducting what the balance of the first mortgage on said property would be at the time of payment, if the mortgage was current, from the fair market value of $146,500.00. At the time the defendant receives the payment due her, she shall convey to the plaintiff all her interest in the marital home and shall have removed all her personal property from said premises. The plaintiff shall hold the defendant harmless on the mortgage on said premises.
If the plaintiff fails to pay said sum to the defendant within 90 days, the defendant shall be entitled to the marital premises by paying him a sum as set forth above within 60 days thereafter. In such event, the plaintiff shall transfer his interest to the defendant upon payment by the defendant. The defendant shall hold the plaintiff harmless on said mortgage.
Upon failure of either to pay said sums, the property shall be sold and the net proceeds shall be divided equally among the parties. If the mortgage is in default, the amount necessary to make it current shall be deducted from plaintiffs share of the proceeds.
The court shall retain jurisdiction on this issue.
4. The plaintiff shall pay for one half of the alleged $15,000.00 debt. The defendant shall pay the balance of said debt. Each party shall hold the other harmless on their portion of said debt. Further, each party shall be responsible for any other debts listed on their respective financial affidavits and hold the other harmless therefrom.
5. The defendant shall keep the 1994 Volvo wagon, pay the Essex Savings second mortgage which was used to purchase said Volvo and hold the plaintiff harmless thereon. Further, she shall keep her guitar, Fleet CT Page 14277 checking account, the furniture listed on her financial affidavit and one half of the balance of the Liberty Bank checking and savings accounts listed on plaintiffs financial affidavit.
6. The plaintiff shall keep the 1985 Chevrolet Astro van, one half of the balance of the Liberty Bank checking and savings account, the items of personal property listed on his financial affidavit and all furniture located in 12 Honey Hill Road.
7. The parties shall each pay one half of the counsel fees to Attorney Susan Connolly appointed by the court to represent the interests of the minor child William within 60 days.
8. Each party shall pay their own attorney's fees.
9. The plaintiff and the defendant shall have the right to file a motion or petition for educational support post judgment pursuant to the provisions of Connecticut Public Act 02-128.
___________________ Vasington, JTR CT Page 14278